**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States Commodity Futures Trading Commission, | No. CV10-0534-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Helmut H. Weber, | |
| Defendant. | |

Plaintiff U.S. Commodity Futures Trading Commission ("CFTC") has filed a motion for entry of a final judgment by default against Defendant Helmut H. Weber d/b/a Weber Capital Management pursuant to Federal Rule of Procedure Rule 55(b). Doc. 17. No response has been filed. The Court will grant the motion with respect to injunctive relief, and will reserve judgment on restitution and civil penalty subject to a supplemental filing by Plaintiff.

**I.  Background.**

   **A.  Factual and Procedural Context.**

Plaintiff commenced this action on March 3, 2010. Doc. 1. The complaint alleges that Defendant engaged in fraudulent conduct in violation of § 4b(a)(2)(A)-(C) of the Commodity Exchange Act ("the Act"), as amended by Pub. L. No. 110-246, 122 Stat. 1651 (2008). Doc. 1 at 2. Plaintiff's complaint seeks injunctive relief, restitution, disgorgement, rescission of contracts and agreements, and costs and fees. *Id.* at 11-13. After personal service was attempted, Defendant was served by publication in April and May, 2010. *See*

Doc. 13 at 2; Docs. 13-1, 13-2; Doc. 17 at 2. Defendant did not answer or otherwise respond to the complaint, and the Clerk entered Defendant's default on July 1, 2010 pursuant to Rule 55(a). Doc. 14.

Plaintiff filed the present motion for default judgment on August 18, 2010 (Doc. 17), and also filed a corrected certificate of service on October 17, 2010 (Doc. 19). As of the date of this order, Defendant has failed to respond in any manner.

**B.     Relief Requested.**

Plaintiff asks the Court to order that Defendant pay restitution in the amount of $287,000 to persons whom he defrauded, and pay a civil monetary penalty of $861,000 with post-judgment interest. Doc. 17 at 16-17.

Plaintiff also requests injunctive relief. More specifically, Plaintiff moves that Defendant:

> in or in connection with any order to make, or the making of, any contract of sale of any commodity:
>
> A.   in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, or
>
> B.   for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of Section 5a(g) of the Act, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market,
>
> be permanently restrained, enjoined and prohibited from directly or indirectly: cheating or defrauding or attempting to cheat or defraud any other person; and/or deceiving or attempting to deceive any other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of subparagraph (B) above, with the other person in violation of Section 4b(a) of the Act, 7 U.S.C. § 6b(a) (2006).

*Id.* at 13. Plaintiff further moves to permanently restrain, enjoin, and prohibit Defendant from:

> [(a)]   directly or indirectly violating Section 4b(a) of the Act, 7 U.S.C. § 6b(a) (2006)[;] . . .
>
> [(b)]   trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006));
>
> [(c)]   having any commodity futures, options on commodity futures,

- 2 -

        commodity options, and/or forex contracts traded on his behalf;

[(d)] controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

[(e)] soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

[(f)] applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010); and

[(g)] acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2010)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010).

*Id.* at 14.

**C.  Evidentiary Context.**

Plaintiff has offered the following evidence to support its claims for relief: (1) unanswered allegations made in its complaint and motion for default judgment; (2) a cease-and-desist order from the Arizona Corporation Commission; (3) a 29-count indictment filed by the State of Arizona in Superior Court for Maricopa County; and (4) an affidavit by Michael Amakor, a futures investigator employed by Plaintiff. Docs. 17, 17-1, 17-2, 17-3.

**II.  Discussion.**

A court may grant default judgment against a party if default has been entered. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In doing so, the court may consider, *inter alia*, the following factors: (1) the possibility of prejudice to the plaintiff; (2) the possibility of a dispute concerning material facts; (3) whether default was due to excusable neglect; (4) the policy favoring a decision on the merits; (5) the merits of the claim; (6) the sufficiency of the complaint; and (7) the amount of money at stake. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

**A.     Prejudice, Factual Dispute, Excusable Neglect, and Decision on Merits.**

The first *Eitel* factor weighs in favor of granting a plaintiff's motion when plaintiff "will likely be without other recourse for recovery." *See PepsiCo, Inc. v. Los Potros Distribution Ctr., LLC*, No. CV-07-2425-PHX-DGC, 2008 WL 942283, *1 (D. Ariz. April 7, 2008) (quoting *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)); *Gemmel v. Systemhouse, Inc.*, No. CIV 04-187-TUC-CKJ, 2008 WL 65604, at *3 (D. Ariz. Jan. 3, 2008). Here, Plaintiff served process on Defendant more than five months ago. Docs. 13-1, 13-2. Defendant has failed to respond to the complaint or otherwise appear in this action. If the Court were to deny Plaintiff's motion for default judgment, Plaintiff would have no other recourse for recovery. Moreover, in light of the likelihood of future violations by Defendant, injunctive relief is proper in this case. 7 U.S.C. § 13a-1 (2006).

Because Defendant has made no appearance in this matter, there is no factual dispute. *See Geddes*, 559 F.2d at 560. Moreover, the Court has no basis on which to conclude that failure to appear was due to excusable neglect. Although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, Defendant's failure to appear after being accorded reasonable time forecloses a decision on the merits in this case. *See Los Potros Distribution Ctr.*, 2008 WL 942283, at *4.

**B.     The Merits of the Claim and the Sufficiency of the Complaint.**

The fifth and sixth *Eitel* factors favor a default judgment "where the complaint sufficiently states a claim for relief under the liberal pleading standards of Rule 8." *Los Potros Distribution Ctr.*, 2008 WL 942283, at *2; *Danning v. Levine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978). Plaintiff's complaint alleges that Defendant violated § 4b(a)(2)(A)-(C) of the Act. Doc. 1 at 2, 9-11. Section 4b(a)(2) makes it unlawful for any person to, in the context of a futures contract, (A) cheat or defraud or attempt to cheat or defraud another person; (B) willfully make false reports, statements, or records to another person; or (C) willfully deceive or attempt to deceive another person by any means whatsoever in regard to any order or contract or the disposition or execution of any such order or contract. 7 U.S.C. § 6b(a)(2)(A)-(C). To state a claim for fraud, the complaint must allege "(1) the

making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality." *CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002) (citation omitted).

Plaintiff's complaint alleges that Defendant made multiple misrepresentations and deceptive omissions, including that Defendant was a successful and experienced forex trader, that 100% of the funds invested would be used to trade in the forex market, that he managed client funds, and that he generated high rates of return from forex trading. Doc. 1 at 5-6. Plaintiff's complaint further alleges that Defendant acted with the requisite scienter because he made these promises to customers while knowing that he was misappropriating customer funds, was not trading on customers' behalf, and was issuing false reports to clients. *Id.* at 10. The complaint also alleges that the misrepresentations and omissions were material. *Id.* at 6. Given the court's acceptance of these allegations as true, *see Geddes*, 559 F.2d at 560, the Court finds that Plaintiff has sufficiently stated a valid claim for fraud under the Act.

### C.     The Amount of Money at Stake.

Under the last *Eitel* factor, the court considers "the amount of money at stake in relation to the seriousness of the defendant's conduct." *Los Potros Distribution Ctr.*, 2008 WL 942283, at *3.

#### 1.     Restitution.

Plaintiff requests $287,000 in restitution for Defendant's defrauded customers. Doc. 17 at 15-16. As evidence establishing the amount of restitution Defendant owes, Plaintiff has submitted an affidavit from a CFTC investigator, Michael Amakor, stating that "[f]rom June 18, 2008 to January 31, 2009, customers of Weber and/or WCM deposited approximately $287,000 into accounts held at Bank of America in the name of Weber and WeberFX," and during the same period "there were no payments to customers or redemptions out of the bank accounts held at Bank of America in the name of Weber and WeberFx." Doc. 17-3. The affidavit appears to contradict Plaintiff's complaint in part, however. The complaint states that "[a]ny purported 'profits' Weber *paid* to clients came from existing clients' original principal and/or from funds invested by subsequent clients."

Doc. 1 at 2 (emphasis added). The Court, therefore, cannot be certain that some funds were not returned to clients from other bank accounts Defendant may have controlled. Alternatively, the state indictment alleges that Defendant deprived seven named investors of $234,503.[1] Doc. 17-2 at 4. This type of allegation, however, is not assumed true in a default judgment action. *See Geddes*, 559 F.2d at 560 ("the factual allegations of the complaint, *except those relating to the amount of damages*, will be taken as true" (emphasis added)). Because the facts alleged indicate that some restitution is owing, however, the Court will require Plaintiff to provide an unambiguous statement of the restitution amount.

### 2. Civil Monetary Penalty.

"[T]he court shall have jurisdiction to impose, on a proper showing . . . a civil penalty in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation."[2]  7 U.S.C. § 13a-1(d)(1) (2006). The Court finds that a civil penalty is justified when considered in relation to Defendant's conduct. Defendant fraudulently solicited money from investors and misappropriated funds. Doc. 1 at 10. Defendant continued this behavior even while under a criminal indictment for fraud and a "cease and desist" order prohibiting him from engaging in fraudulent activity. *Id.* at 7.

Plaintiff requests a civil monetary penalty of $861,000 (Doc. 17 at 15-16), or triple the amount of restitution owing. Because Plaintiff must file a supplemental memorandum addressing restitution, Plaintiff shall also address the monetary gain to Defendant, as well as the issue of whether, in the absence of monetary gain, the statutory penalty of "not more than . . . $100,000" is assessed for each violation or for all violations combined.

**IT IS ORDERED:**

1. Plaintiff's motion for default judgment (Doc. 17) is **granted in part** as stated above.

---

[1] Richard and Mary Emerson are listed as one joint investor. Doc. 17-2 at 4.

[2] The CFTC's inflation adjustment of the $100,000 statutory amount for violations committed during the timeframe in this case is $130,000 prior to October 23, 2008, and $140,000 on or after that date. 17 C.F.R. § 143.8(a)(1)(iii)-(iv).

    2.    Defendant and any other persons or entities acting on behalf of, at the direction of, or for the benefit of Defendant are **permanently enjoined** from conduct stated in Part I.B of this order insofar as such conduct is made by, relates to, benefits, or otherwise concerns Defendant directly or indirectly.

    3.    Plaintiff shall submit a supplementary memorandum by **December 29, 2010** that includes the following:

        a.    An explanation of the discrepancy between Plaintiff's complaint and the Amakor affidavit with respect to the complaint's implication that funds may have been paid to victims in this case.

        b.    An affidavit establishing conclusively the amount of restitution owed by Defendant as a result of the unlawful conduct found in this case. The affidavit shall expressly include what payments, if any, Defendant made between June 18, 2008 and March 3, 2010, from any and all bank accounts Defendant controlled, to victims of the unlawful conduct found in this case.

        c.    The name and address of the person authorized to receive restitution from Defendant and to disburse it to victims.

        d.    An affidavit establishing conclusively the gain to Defendant by each violation of the Act.

        e.    A discussion about whether, in the absence of gain to Defendant, the statutory penalty of "not more than . . . $100,000" is assessed for each violation or for all violations combined.

DATED this 9th day of December, 2010.

*David G. Campbell*
———————————————
David G. Campbell
United States District Judge